NEW JERSEY DEPARTMENT OF LABOR,
WORKMEN'S COMPENSATION BUREAU.

CELIA KRAMERMAN, PETITIONER, v. JACK SIMON, ASSO-
CIATED INDEMNITY COMPANY OF NEW YORK, RE-
SPONDENT.

Decided April 15, 1942.

For the petitioner, *Harry Cohn.*

For the respondent, *Edwin Joseph O'Brien.*

\* \* \* \* \* \* \*

Celia Kramerman, the petitioner, was sworn and she testi-
fied that she was forty-nine years old, the widow of the dece-
dent and was living with him at the time of his death. It
was stipulated that the decedent made $35 a week.

Samuel Lakoff, the next witness produced on behalf of the
petitioner, testified that he was a carpenter and had been
working with the decedent on the job in question for a week
or a week and a half and that it was a remodeling job. He
testified that decedent was doing carpenter work and that he
was sawing boards and the witness was nailing the boards.
That the work was being done on top of the roof of the exten-
sion of the house. He stated that the lumber was 1 x 10 ship
laths and that was a warm day though he could not tell how
warm it was. He testified that the decedent and he had gone
to work about eight o'clock in the morning and that the dece-
dent had done various carpenter work, such as hammering,
sawing, planing and nothing else; that Mr. Simon, the boss,
was downstairs handing up the wood to them and that when
the wood was handed up to the carpenters they would slide
it along over the edge of the roof and the decedent would.

then saw it into small pieces. A picture was offered in evidence and marked *Exhibit P*-1, which showed the place where they were working at the time in question. This witness said the pieces of wood were about six foot and that they weighed about five or six pounds or maybe a little more. He stated that none of the boards before they were sawed were over twelve feet long. That they were about $7/8$ by 10 inches by 12 feet long and Simon would pass the boards up to the witness on the extension and that they did not lift the boards but just slid them along.

This witness testified that about five or eight minutes after the time he last saw Kramerman, who had not complained to him of any distress or exhibited any illness, that the witness went inside and found Kramerman lying on the floor of a room in the house with his hand under his head and with no tools or material of any kind anywhere near them. All attempt to revive him was futile and the man was pronounced dead.

Upon cross-examination this witness stated he did not know whether the decedent ever went down the ladder that morning or not. He described the decedent's position in the room, stating that he was lying with his hand under his head as though he were taking a nap and that decedent had no work to be done in that room.

The petitioner next produced Allwin P. Schaefer, who stated that he was doing sheet metal work on the job in question; that he saw the decedent working that morning on the roof; that he does not know how the decedent went up and down and that it was a warm day. He said that there was nothing unusual that he could think of or recall. He was there when they went in and found the man lying on the floor dead. He said he was in the yard when he heard Sam Lakoff call for Jack Simon and that Simon not answering that Lakoff called him, the witness, and told him that Frank had fainted or something, so that the witness ran up the ladder and found decedent in the corner of the room resting with his head on his hand and that he was lying down as though he were sleeping, relaxing. He tried to bring him to but was unable to.

William Wiener was next introduced as a witness on behalf of the petitioner and gave the temperature and humidity, as well as the prevailing winds, at 7 A. M., noon, 2 P. M., as recorded by the machine on top of the Kresge Department Store in the City of Newark.

On cross-examination this witness stated he did not know what the temperature or humidity was up in Maplewood but did not think it varied more than a degree or two.

Elmer Schultz was the next witness produced on behalf of the petitioner and testified he was a police officer in Maplewood and that he received a call at approximately 12:25 P. M. That when he came to the house where decedent had died he found the dead man lying in a bedroom upstairs on the second floor and his face was pale and a little bluish but there was no pulse. That Sam Lakoff and Jack Simon were the only ones that he could recall being present at the time.

The next witness produced was one Jack Simon, the respondent, called by the petitioner, who stated that when he left the job that morning it was about ten minutes to twelve and he told the decedent that he was going to lunch. He stated that some weeks before while decedent was working on a job with all little boards, about 1 x 6 pine, that all of a sudden he stretched out and fainted away. This he thought occurred about four or five weeks prior to his death.

Dr. J. Allen Yager, practicing since 1933 in this state, was next produced as a witness and upon the basis of a hypothetical question attempted to connect the death with his work that morning.

The death certificate, which was offered in evidence by the petitioner, showed that the decedent died of "cardiac failure coronary thrombosis." It further stated that the disease or injury had no relation to decedent's work.

The respondent produced Edgar J. Salzman, who is meteorologist for the United States Government and in charge of the official government weather station at the Newark, New Jersey, airport. His records of the official weather, humidity, and temperature and prevailing winds data were introduced in evidence, as was also the official weather report the same day for New York City.

Dr. Irving Willner was next produced on behalf of the respondent and stated that there was no possibility of anybody examining a dead man and being able to tell definitely whether he had died from a heart attack (and if so, what kind of a heart attack), a stroke or many other conditions. He stated that an autopsy was necessary to determine the exact cause of death.

Dr. Jerome Kaufman, who is a heart specialist and instructor in cardiology, testified to a like effect and stated that in his opinion the man's death had absolutely nothing to do with his employment or his work on that day.

Dr. Leon Lewis, a clinical pathologist, testified in like manner and also stated that in his opinion that the decedent's death had no causal relationship whatsoever with his employment or his work on that day.

Dr. George P. Olcott was then produced by the petitioner. It had been stipulated that Dr. Olcott would be brought in as a fact witness and with that understanding the respondent went ahead with his testimony.

At the conclusion of the respondent's case Dr. George P. Olcott was produced and he was asked what he meant by setting forth at the bottom of the certificate that the man's death had no relationship to his work or employment, and the doctor answered his idea and interpretation was that he meant the man had not died of an occupational disease. This doctor also stated that the reason he gave the cause of death as he did was that in his opinion it was the probable cause of his death.

As the result of the testimony adduced before me and the stipulation of fact and the evidence introduced, I do find as a fact that the petitioner has failed to prove by a preponderance of the evidence that decedent died as the result of an accident arising out of and in the course of his employment with respondent. The petitioner having failed to meet the burden of proving her case by a preponderance of the evidence the petition will be dismissed and judgment entered in favor of the respondent.

JOHN C. WEGNER,
*Deputy Commissioner.*